UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAMS INTERNATIONAL CO., LLC,

    Plaintiff,

v.

NEW WEST MACHINE TOOL CORP.,

    Defendant.
_____/

Case No. 09-12516

Honorable Nancy G. Edmunds

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION [3]

This matter comes before the Court on Plaintiff Williams International Co., LLC ("Williams")'s motion to compel arbitration. For the reasons stated more fully below, this Court GRANTS Plaintiff's motion to compel arbitration.

**I.   Facts**

**A.   The Parties**

Plaintiff Williams is a Michigan limited liability company that manufactures engines and propulsion units for the aviation and aerospace industries.

Defendant New West is a Utah corporation that is in the business of ordering the manufacture, sale, delivery, and service of precision milling and mill/turn machines for use in the aerospace industry.

**B.   Utah Lawsuit**

On May 8, 2009, Defendant New West initiated a lawsuit against Plaintiff Williams in the United States District Court for the District of Utah, Case No. 2:09cv00425, assigned

to Judge Dale A. Kimball ("the Utah Litigation").  Defendant New West filed an Amended Complaint on May 14, 2009, alleging that Plaintiff Williams breached two separate purchase orders:  the "2007 Purchase Order" and the "2008 Revised Purchase Order."  Specifically, as to the 2007 Purchase Order, New West alleges that Williams's failure to commission scheduled maintenance on three machines purchased under the 2007 Purchase Order constitutes a substantial and material breach of that contract thus voiding New West's special warranty as to the three identified machines.  (Utah Am. Compl. ¶¶ 49-51, Prayer for Relief ¶ 1.)  As to the 2008 Revised Purchase Order, New West alleges that Williams's cancellation and termination of this Order constitutes a substantial and material breach of contract that caused it to suffer over $3 million in damages and also constitutes tortious interference with its business relationship with Mori Seike USA, its manufacturer supplier.  (*Id.* at ¶¶ 52-67; K. Roestenburg Decl. ¶ 7.)

### C. The Parties' Contractual Relationship

Williams and New West have had a business relationship for about a decade.  Williams has, from time-to-time, purchased milling machines from New West, using a purchase order executed by both parties.  (J. Shephard Decl. ¶¶ 5-6.)  Each purchase order attached and incorporated by reference a set of Williams's standard commercial terms and conditions, including a clause requiring that any dispute related to the purchase order be arbitrated in Oakland County, Michigan, where Williams is headquartered and operates.  (*Id.* at ¶¶ 3, 7-10.)

### D. Contracts At Issue - 2007 Purchase Order and 2008 Revised Purchase Order

**1. 2007 Purchase Order**

On the first line of its first page, the 2007 Purchase Order incorporates by reference Williams's POP3206 terms and conditions: "This order is subject to the terms and conditions per attachment herein: POP3206 . . . ." (Pl.'s Ex. D, 2007 Purchase Order No. 374391 at 1 of 11.)  This information is repeated on page seven, under the title "Additional Provisions," and provides in relevant part that:

> The equipment ordered herein is subject to the terms and conditions set forth in this order.  If/Where a conflict of terms takes place, the following order of precedence shall apply:
>
> A.  The Purchase Order.
>
> * * *
>
> C.  Purchase Order Provisions (POP) 3206 attached hereto and made a part hereof.

(*Id.* at 7 of 11.)

Attachment POP3206 begins with the all capital heading: "THIS ORDER IS SUBJECT TO THE FOLLOWING PROVISIONS."  (Pl.'s Ex. E, POP3206 at 1.)  Paragraph 30 contains the arbitration clause that is at issue in this lawsuit and the Utah Litigation:

> (3)  DISPUTES:  Any claim, controversy or dispute arising out of or relating to the performance of this purchase order which is not disposed of by agreement shall be settled by arbitration.  The procedure for which will follow the rules of the American Arbitration Association.  The award rendered by the arbitrator(s) shall be final and binding and the judgment may be entered thereon in any court having jurisdiction thereof.  Pending final decision of a dispute, controversy, or claim hereunder, the seller shall proceed with the performance of this order.  The arbitration provided for herein shall be held in Oakland County, Michigan.

(*Id.* at 2 ¶ 30.)  Paragraph 33 provides that "Michigan law shall apply to this order and its construction, except for Michigan's conflict of laws provision which shall not apply."  (*Id.* at ¶ 33.)

New West does not deny that it received these terms and conditions nor does it dispute that they contain the above-quoted provisions. Rather, New West claims that it did not read the terms and conditions (at least paragraph 30) and that "no Williams' representative brought to the attention of any New West representative the existence of any provision of the document dealing with arbitration in Oakland County, Michigan." (Def.'s Combined Br. at 2; K. Roestenburg Decl. ¶¶ 17-19.)

### 2. 2008 Revised Purchase Order

In September 2008, representatives of Williams and New West executed the 2008 Revised Purchase Order, No. 376432B, where New West agreed to sell and Williams agreed to purchase five highly specialized milling machines. (Pl.'s Ex. B.) New West's President and COO, Kelly Roestenburg, personally reviewed and signed the 2008 Revised Purchase Order. (*Id.* at 16; Roestenburg Decl. ¶ 22.)

The 2008 Revised Purchase Order, similar to the 2007 Purchase Order, attached and incorporated by reference "Williams International Purchase Order Terms and Conditions," Form CT100 -- Williams's standard commercial terms and conditions. (Pl.'s Ex. C.) On the first two lines of its first page, the 2008 Revised Purchase Order provides that:

> This order is subject to the terms and conditions per attachment herein: Attachment 1: CT100

(Pl.'s Ex. B, 2008 Revised Pur. Order at 1 of 16.) This information is repeated on page eleven, under the title "Additional Provisions," and provides in relevant part that:

> The equipment ordered herein is subject to the terms and conditions set forth in this order. If/Where a conflict of terms takes place, the following order of precedence shall apply:
>
> A. The Purchase Order.

\* \* \*

> D.  Standard Commercial Terms (CT) 100 attached hereto and made a part hereof.

(*Id.* at 11 of 16.)

Immediately following this provision, the 2008 Revised Purchase Order sets forth an integration clause that expressly notifies New West, as Seller, that it "shall notify the buyer [Williams] immediately and specifically of anything herein which the seller does not assent to as a term and condition governing transaction covered herein." (*Id.*)  New West did, in fact, rely on this language to suggest several modifications to the purchase order during negotiations.[1]  (Pl.'s Stay Resp. Br. Ex. H, 8/4/08 email.)  New West did not, however, object to the incorporation of the CT100 terms and conditions and did not inform Williams that they were not included with the purchase order documents under consideration or ask for a copy.

Williams's standard commercial terms contained on Form CT100 and incorporated by reference in the 2008 Revised Purchase Order include an arbitration clause similar to that in the 2007 Purchase Order:

> 23. DISPUTES: Buyer and Seller shall strive to settle amicably and in good faith any dispute arising in connection with this Purchase Order.  If they are unable to do so, the dispute shall be resolved by binding arbitration conducted under the rules of the American Arbitration Association, as presently in force, by three arbitrators appointed in accordance with said rules.  The place of arbitration shall be Oakland County, Michigan.  Pending resolution of any dispute hereunder, Seller shall proceed diligently with the performance of work, including the delivery of goods in accordance with Buyer's direction.  Upon resolution of the

---

[1] The 2008 Revised Purchase Order followed months of negotiations between Williams and New West.  (Utah Am. Compl. ¶¶ 33-37; Shephard Decl. ¶¶ 11-13.)

dispute, this Order shall be equitably adjusted, if necessary, to reflect such resolution.

(Pl.'s Ex. C, Form CT100 at 5 ¶ 23.) Paragraph 18 provides that "This Order shall be deemed to be a contract entered into in the State of Michigan, U.S.A., and shall be construed and governed in all respects, and the legal relationships between the parties shall be determined in accordance with applicable commercial law of the State of Michigan, U.S.A., including but not limited to, the Uniform Commercial Code, as the same may be enacted and in force from time to time in that jurisdiction." (*Id.* at ¶ 18.)

In its Utah Amended Complaint, New West alleges that the 2008 Revised Purchase Order "was also subject to the 'Williams International Purchase Order Terms and Conditions' (a standardized form apparently applicable to Williams' purchase orders generally)." (Utah Am. Compl. ¶ 27.) In his Declaration, Kelly Roestenburg, New West's President and COO, proclaims that he "read the allegations in the Amended Complaint . . ., and state the same to be true to the best of my knowledge, information and belief." (Roestenburg Decl. ¶ 4.)

Despite the above, Mr. Roestenburg also declares that, although the 2008 Revised Purchase Order makes reference to the CT100 Terms and Conditions, it was not included with the 2008 Revised Purchase Order "at the time" he reviewed, accepted and signed that purchase order, it is not currently included with the 2008 Revised Purchase Order that is in New West's possession, and he does not "recall" seeing it "in connection with" his "review and execution" of the 2008 Revised Purchase Order. (*Id.* at ¶¶ 23-25.) Nonetheless, his conduct reveals not only knowledge but reliance on the CT100 Terms and Conditions. (Pl.'s Stay Resp. Br. Ex. I, 11/13/08 letter at 5; Ex. J, 11/28/08 letter at 2.) The

6

specific language Mr. Roestenburg quoted in his November 13, 2008 letter and relied upon in his November 28, 2008 letter comes from Paragraph 23 of CT100. Paragraph 23 also contains the arbitration clause that is at issue in this lawsuit. Thus, in the Utah Litigation, New West relies on the CT100 Terms and Conditions to establish its claims against Williams with regard to the 2008 Revised Purchase Order. In contrast, in this action, New West argues that it was unaware of these same terms and conditions at the time it entered into the 2008 Revised Purchase Order and further argues that it would not have accepted the Purchase Order if it had been aware of Paragraph 23 and the arbitration clause.

### E. This Lawsuit

Plaintiff Williams filed this action on September 25, 2009, based on diversity jurisdiction, seeking a judgment declaring that Defendant New West must arbitrate the claims it raised against Williams in the Utah Litigation. An Amended Complaint was subsequently filed on August 5, 2009, also seeking a judgment declaring that New West must arbitrate the claims asserted in the Utah Litigation.

In the Utah Litigation, Williams filed a motion to dismiss or, in the alternative, to stay that litigation pending resolution of this action. On September 29, 2009, the Utah District Court issued an order staying the Utah Litigation pending this Court's decision on Williams's motion to compel arbitration, relying on a Tenth Circuit decision observing that "[a] district court lacks authority to compel arbitration in other districts, or in its own district, if another has been specified for arbitration." *New West Machine Tool Corp. v. Williams Int'l Co., LLC*, Case No. 2:09CV00425DAK, Mem. Decision & Order [14] at 2 (C.D. Utah Sept. 29, 2009) (quoting *Ansari v. Qwest Comm. Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005)).

7

This matter is now before the Court on Williams's motion to compel arbitration of the claims asserted against it in the Utah Litigation.

## II. Compel Arbitration Standard

In seeking dismissal of Plaintiffs' claims, Defendant relies on the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, which provides that arbitration clauses in commercial contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "A party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. "Upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.*

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id.* But a party "cannot be required to submit to arbitration any dispute that the party has not agreed to so submit." *Bratt Enterprises, Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 612 (6th Cir. 2003); s*ee also Albert M. Higley Co. v. N/S Corp.*, 445 F.3d 861, 863 (6th Cir. 2006) (internal citations omitted)

(noting that "arbitration under the Federal Arbitration Act is a matter of consent, not coercion").

"Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

When determining "whether the arbitration clause itself was validly obtained," state contract law is applied, "provided the contract law applied is general and not specific to arbitration clauses." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 393 (6th Cir. 2003). State law inconsistent with the FAA's "broad principle of enforceability" of arbitration agreements, however, is pre-empted by federal arbitration law. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 661, 688 (1996); *Stout*, 228 F.3d at 716.

If a court determines that the cause of action is covered by an arbitration clause, Section 3 of the FAA provides that "it must stay the proceedings until the arbitration process is complete." *Fazio*, 340 F.3d at 392 (citing 9 U.S.C. § 3). Courts have held, however, that when the court determines that all the claims in a cause of action are to be submitted to arbitration, it may dismiss, rather than stay the action because "staying the action will serve no purpose." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). *See Hensel v. Cargill, Inc.*, No. 99-3199, 1999 WL 993775, *4 (6th Cir. Oct.

19, 1999) (rejecting an argument that dismissal was improper, citing *Alford* with approval, and holding that dismissal is proper when all claims in a suit are submitted to arbitration).

### III. Analysis

New West argues that (1) Michigan's arbitration law governs rather than the FAA and the arbitration clauses at issue here do not satisfy Michigan law; (2) the CT100 Terms and Conditions were not attached to the executed 2008 Revised Purchase Order and thus were not properly incorporated by reference; and (3) the parties' arbitration agreements are procedurally and substantively unconscionable because they are in fine print, were not subject to negotiation, and unreasonably force New West to arbitrate in a remote location. Williams argues the opposite. The Court begins its analysis by determining whether the FAA or Michigan's arbitration laws govern here.

#### A. The FAA, Not Michigan's Arbitration Laws, Apply Here

New West does not dispute that the purchase orders at issue here involve interstate commerce. The FAA applies to commercial transactions governed by written agreements that provide for arbitration of disputes arising out of that transaction. *Southland Corp. v. Keating*, 465 U.S. 1, 10-11 (1984). Accordingly, the arbitration clauses fall within the scope of the FAA. *See Mechanical Power Conversion, L.L.C. v. Cobasys, L.L.C.*, 500 F. Supp. 2d 716, 719 (E.D. Mich. 2007) (observing that, despite diversity jurisdiction, "the FAA created substantive law regarding arbitration clauses that must be enforced both in state and federal courts."). Nonetheless, New West argues that Michigan's arbitration laws should apply here. This Court disagrees.

Relying on the Supreme Court's decision in *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University*, 489 U.S. 468 (1989), New West argues

10

that, because Williams's incorporated terms and conditions include choice-of-law provisions stating that Michigan law governs interpretation of the purchase orders, Michigan's arbitrability rules rather than those of the FAA must also govern the standards applied to the parties' arbitration agreements. This argument has been firmly rejected by the federal courts.

A decision New West relies upon for support refutes rather than supports its argument. In *Volk v. X-Rite, Inc.*, 599 F. Supp. 2d 1118 (S.D. Iowa 2009), the court was similarly presented with the threshold issue "whether federal or Michigan law applies" when the contract at issue contains a choice-of-law provision but the arbitration clause does not. *Id.* at 1123. After examining relevant Supreme Court and Eighth Circuit Court of Appeal decisions, the district court in *Volk* concluded that "the FAA will govern federal courts' interpretation of arbitration clauses unless the parties make 'abundantly clear' their preference for state arbitration law," and "[a] generic choice-of-law clause that is silent on whether state arbitration rules will govern the agreement, as a matter of law, does not make the parties' intent to have federal courts apply state arbitration law 'abundantly clear.'" *Id.* at 1124-25 (citations omitted). The Sixth Circuit is in agreement.

In *Ferro Corporation v. Garrison Industries, Inc.*, 142 F.3d 926 (6th Cir. 1998), the Sixth Circuit recognized that the Supreme Court's holding in *Volk* had been substantially limited by its subsequent decision in *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995). In *Ferro*, the Sixth Circuit applied *Mastrobuono* and concluded that the choice-of-law provision in the parties' contract was "no indication that the parties intended to incorporate Ohio law, or to invoke the power of courts" into their arbitration agreement and thus displace application of the FAA. *Id.* at 937. Similarly, in a 2005 decision, the Sixth

Circuit concluded that a choice-of-law provision providing that "this agreement shall be governed by the laws of the State of Michigan" did not displace the rules of the FAA. *See Jacada (Europe), Ltd. v. International Marketing Strategies, Inc.*, 401 F.3d 701, 710-12 (6th Cir. 2005), *abrogated on other grounds, Hall Street Assocs., LLC v. Mattel, Inc.*, 128 S. Ct. 1396 (2008). The *Jacada* court observed that, "[j]ust as in *Mastrobuono*, the choice-of-law clause [in *Jacada*] could be read as only specifying what state contract law the parties wished to use;" the parties had "entered into an agreement in which, without the choice-of-law provision, the FAA rule would apply;" and "the clause does not unequivocally suggest an intent to displace the default federal standard." *Jacada*, 401 F.3d at 711. Thus, "[c]onsidering the federal policy in favor of arbitration" and relevant Supreme Court and Circuit Court of Appeal decisions, the Sixth Circuit determined that the FAA would not be displaced "when the only evidence of such intent is a generic choice-of-law provision." *Id.* at 712. Following these decisions, the United States District Court for the Eastern District of Michigan recently rejected the argument New West makes here. *See Mechanical Power*, 500 F. Supp. 2d at 720-21 (rejecting an argument that Michigan law applies to the parties' arbitration agreement because there was "no clear indication in the agreement that the arbitration procedures are governed by Michigan law" and thus "the strong presumption in the federal courts toward compelling arbitration applies.").

Like the decisions discussed above, although there is a choice-of-law provision providing that the parties' 2007 Purchase Order and 2008 Revised Purchase Order are to be interpreted by applying Michigan law, there is no clear indication that Michigan law

should displace federal law on arbitration.[2] Accordingly, the FAA rules govern whether the claims asserted against Williams in the Utah Litigation should be compelled to arbitration.

### B. The Arbitration Agreement Was Properly Incorporated By Reference in the 2008 Revised Purchase Agreement

This Court acknowledges that before it "can send a case to arbitration, it must first determine that a valid agreement to arbitrate exists." *Fazio*, 340 F.3d at 393 (citing 9 U.S.C. § 2; *Stout*, 228 F.3d at 714). This "gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks and citations omitted).

New West does not dispute that the arbitration agreement in POP3206 Terms and Conditions was properly incorporated by reference in the 2007 Purchase Order but argues that it should not be bound by that agreement because Williams did not highlight its presence. New West also disputes that the CT100 Terms and Conditions were properly incorporated by reference in the 2008 Revised Purchase Order because the terms were not attached to that Purchase Order when it was executed. The relevant case law does not support New West's arguments. Michigan law allows parties to incorporate terms and conditions by reference, and the courts have consistently rejected arguments similar to those of New West.

---

[2]Moreover, as discussed at oral argument and in Plaintiff's briefs, even if Michigan arbitration laws did apply, the arbitration clauses at issue here provide that disputes are to be resolved by binding arbitration and that the rules of the American Arbitration Association apply thus making them statutory rather than common law arbitration agreements.

"It is well settled that the failure of a party to obtain an explanation of a contract is ordinary negligence. Accordingly, this estops the party from avoiding a contract on the ground that the party was ignorant of the contract provisions." *Scholz v. Montgomery Ward & Co.*, 468 N.W.2d 845, 848 (Mich. 1991). Applying Michigan law, the Sixth Circuit recently addressed arguments similar to those New West presents here:

> ASC argues that the "Terms & Conditions Of Sale" Bosch cites were never sent to it, and therefore, because ASC had no notice of them they never became a part of the contract. However, Bosch sent seven quotations, each stating that "Bosch standard terms and conditions apply unless otherwise specified." Michigan law permits a party to incorporate terms or documents from other writings. A party may not plead ignorance as an excuse if the contract is clear on its face that such terms were intended to be incorporated. To the extent ASC contends that the term was not capitalized or otherwise point to a specific document, the argument fails. In *Forge* [*v. Smith*, 580 N.W.2d 876, 882 (1998)], the Michigan Supreme Court held that a contract provision incorporating "architectural specifications" was sufficiently specific to conclude that it clearly refers for some of its terms to an extraneous document. Notably, those terms were not capitalized either, nor did they cite the title of the outside document. Thus, <u>we find that the language clearly and unambiguously evinced an intent to incorporate Bosch's standard terms and conditions</u>. ASC's proffered alternate construction is both unreasonable and irrelevant because <u>the issue is notice</u>, and ASC fails to explain why no one bothered to pick up the phone to seek clarification.

*Robert Bosch Corp. v. ASC, Inc.*, 195 F. App'x 503, 505 (6th Cir. 2006) (internal quotation marks and citations omitted) (emphasis added). *Accord, Constr. Fasteners, Inc. v. Digital Equip. Co.*, No. 185679, 1996 WL 33348735, *2 (Mich. Ct. App. Oct. 22, 1996) (rejecting the same "no attachment" argument raised here, observing that "[w]here additional documents or terms are made part of a written contract by reference, the parties are bound by those additional terms even if they have never seen them, and concluding that "[a]lthough the standard terms and conditions were not attached to the letter of

14

authorization, plaintiff was put on notice that they were incorporated by reference" and "will not be heard to claim that those terms were not applicable.").

New West's reliance on *Manasher v. NECC Telecom*, No. 06-10749, 2007 WL 2713845 (E.D. Mich. Sept. 18, 2007), is misplaced. In *Manasher*, the issue was whether a statement on the plaintiffs' invoice for phone services was sufficient to incorporate a document that included an arbitration agreement found only on the defendant's website. *Id*. at **3-6  The court found that the language on the invoice did "not betray a clear intent" that the referenced document was to "be considered part of the contract between the parties." *Id.* at *6. The facts in *Manasher* are vastly different than those presented here. Williams's CT100 Purchase Order Terms and Conditions are expressly and unambiguously incorporated by reference on both the first and eleventh pages of the 2008 Revised Purchase Order.

### C. The Arbitration Agreements Are Not Unconscionable

The Court now considers New West's argument that the arbitration agreements are unconscionable and thus unenforceable. New West argues that the parties' arbitration agreements are procedurally and substantively unconscionable because (a) they are buried in fine print in referenced terms and conditions and were not subject to negotiation, and (b) they force New West to arbitrate in a remote location.

Under the FAA, courts look to state contract law to determine whether a contract is unconscionable. *Andersons, Inc. v. Horton Farms*, 166 F.3d 308, 322 (6th Cir. 1998). Whether an arbitration agreement is unconscionable presents a matter of law for the court to decide. *Id.* at 323. "Michigan applies a two-prong test of 'procedural' and 'substantive' unconscionability." *Id.* at 322. It involves two types of inquiries: "(1) What is the relative

15

bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?;" and "(2) Is the challenged term substantively reasonable." *Id.* (internal quotation marks and citations omitted). The first inquiry addresses procedural unconscionability whereas the second addresses substantive unconscionability. Both must be found to exist for an agreement to be considered unconscionable. *Id.*

### 1. Procedural Unconscionability

New West argues that the arbitration agreements are procedurally unconscionable because they are buried in fine print in referenced terms and conditions that were not subject to negotiation. This Court rejects New West's arguments of procedural unconscionability.

"Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the contested term." *Clark v. DaimlerChrysler Corp.*, 706 N.W.2d 471, 474 (Mich. Ct. App. 2005). Applying Michigan law, the Sixth Circuit has observed that "the most important factors in determining procedural unconscionability are (1) whether the relatively weaker party had an alternative source with which it could contract, and (2) whether the contract term in question was in fact negotiable." *Andersons, Inc.*, 166 F.3d at 324.

New West cannot establish procedural unconscionability. Both New West and Williams are sophisticated parties with equal bargaining power. In fact, in the business transactions at issue here, New West was the Seller; this is not a scenario where a buyer is complaining that it had no alternative source and was thus forced to accept a challenged term. As the Seller, New West was in a position to reject Williams's offer to buy. Moreover,

as to the 2008 Revised Purchase Order, Williams presents evidence showing New West was able to negotiate. Finally, that Purchase Order expressly provides that "[t]he seller shall notify the buyer immediately and specifically of anything herein which the seller does not assent to as a term and condition governing transaction covered herein." (2008 Revised Purchase Order at 11 of 16.) New West failed to take advantage of this clause and thus cannot now be heard that it had no opportunity to negotiate the arbitration clause.

### 2. Substantive Unconscionability

New West likewise cannot establish substantive unconscionability. A term is not substantively unconscionable "simply because it is foolish for one party and very advantageous to the other." *Clark*, 706 N.W.2d at 475. "Instead, a term is substantially unreasonable where the inequity of the term is so extreme as to shock the conscience." *Id*. There is nothing here about the challenged arbitration agreements that shocks the conscience. Both parties agreed to arbitrate any disputes arising in connection with the 2007 Purchase Order and the 2008 Revised Purchase Order. That New West must travel to Oakland County, Michigan does not shock the conscience. Unlike the plaintiff in *Vegter v. Forecast Financial Corporation*, No. 1:07-CV-279, 2007 WL 4178947, *4 (W.D. Mich. Nov. 20, 2007), New West is not a financially destitute consumer forced to travel to a remote location to arbitrate claims brought against a far more lucrative and sophisticated party. Unlike *Vegter*, requiring New West to arbitrate its claims against Williams in Oakland County, Michigan, where Williams is headquartered, would not effectively deter New West or other similarly situated sellers from pursuing arbitration. *Id*.

### D. The Parties Agreed to Arbitrate The Claims Asserted in the Utah Litigation

Here, there can be no doubt that the parties agreed to arbitrate the claims asserted by New West against Williams in the Utah Litigation. New West's Amended Complaint is based on the alleged breach of express and/or implied terms of the 2007 Purchase Order and 2008 Revised Purchase Order. Moreover, the arbitration agreements at issue here broadly require New West and Williams to arbitrate "any dispute arising in connection with" the 2008 Revised Purchase Order and "any claim, controversy, or dispute arising out of or relating to the performance of" the 2007 Purchase Order. (CT100 Terms & Conditions at ¶ 23; POP3206 Terms & Conditions at ¶ 30.) The federal courts have routinely found that similar broad language requires arbitration of virtually any claim arising between the contracting parties. *See, e.g., Cincinnati Gas & Elec. Co. v. Benjamin F. Shaw Co.*, 706 F.2d 155, 160 (6th Cir. 1983) (observing that "[w]here a commercial contract contains a broad arbitration provision covering all controversies arising under the agreement, arbitration is ordered unless the party seeking to avoid it can show that the particular dispute is expressly excluded"); *First Union Real Estate Equity and Mortg. Inv. v. Crown Am.*, No. 93-3459, 1994 WL 151338, *3 (6th Cir. Apr. 26, 1994) (observing that "[a]n arbitration clause requiring arbitration of any dispute arising out of an agreement is 'extremely broad.' A claim, regardless of the legal label assigned to it, falls within the scope of [an] extremely broad arbitration clause if the allegations underlying the claim or its defenses involve matters covered by the agreement."). Because the claims asserted by New West against Williams in the Utah Litigation involve a dispute within the broad scope of the parties' arbitration agreements, they must be arbitrated consistent with the well-established federal policy favoring the enforcement of arbitration agreements.

**IV. Conclusion**

For the above-stated reasons, Defendant's motion to compel arbitration is GRANTED.

It is FURTHER ORDERED that this matter is STAYED pending arbitration.


        s/Nancy G. Edmunds
        Nancy G. Edmunds
        United States District Judge

Dated: January 22, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on January 22, 2010, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer
        Case Manager